Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4235 | **DATE** | 2/12/2001 |
| **CASE TITLE** | colspan="3" | Shaikh vs. City of Chicago, et al. |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 3/1/01 at 9:30A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Defendants' motion to dismiss (21) is granted as to Counts 1,5,6, and 7 but is otherwise denied. Defendants are directed to answer Counts 2,3, and 4 on or before 2/23/01. The case is set for status on 3/1/01 at 9:30a.m. for the purpose of setting a discovery schedule.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | 3 number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | FEB 13 2001 date docketed | |
| ✓ | Docketing to mail notices. | | 28 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | | FEB 13 2001 date mailed notice | |
| JD courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHAHID SHAIKH, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 00 C 4235 |
| CITY OF CHICAGO, a municipal corporation, JULIA STASCH, individual and official capacity; and DAVID SALTZMAN, individual and official capacity, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Shahid Shaikh filed a seven-count complaint against the City of Chicago, its Commissioner of the Department of Housing, Julia Stasch, and its Deputy Commissioner of the Department of Housing, David Saltzman. Shaikh claims that the defendants violated the Fair Housing Act, 42 U.S.C. §§ 3604 & 3617, and 42 U.S.C. §§ 1981, 1982, & 1983 by their conduct in connection with Shaikh's intended purchase of the Lowe Avenue Terrace Apartments (Counts 1-4). Shaikh also alleges that defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act, the Connecticut Unfair Trade Practices Act, and that they committed fraud and intentional interference with contractual relations under Illinois common law (Counts 5-7). Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). By agreement of the parties, Counts 5-7 are dismissed with prejudice on statute of

1



limitations grounds. For the reasons that follow, the balance of defendants' motion is granted in part and denied in part.

## ALLEGATIONS OF THE COMPLAINT

Shaikh is an East-Asian, Muslim male who was born in India but is now a United States citizen and resident of Connecticut. He was interested in buying the Lowe Avenue Terrace Apartments at 6521 South Lowe Avenue in Chicago, which were owned by the Department of Housing and Urban Development (HUD). On March 5, 1998, HUD accepted Shaikh's bid during a public auction of the property. Final closing transactions were scheduled to take place on or before May 13, 1998. Shaikh was financially able to purchase the property and was the most qualified candidate.

Defendants contacted HUD on several occasions concerning the sale of the property to Shaikh. On March 30, 1998, Commissioner Stasch informed a local HUD representative that defendants were aware that HUD had accepted a bid on the property; she also requested that HUD retain ownership in the property to allow for the "relocation of the tenants and transfer of the property to the City" and said that "the City would view the transfer of this property to an out of state buyer . . . to be a significant impediment to the revitalization" of that area of the city. On April 3, 1998, Deputy Commissioner Saltzman informed HUD's Assistant General Counsel in Chicago that the City was considering acquiring the property through eminent domain should HUD transfer the property to Shaikh. In an April 10, 1998 letter to HUD, Stasch restated defendants' interest in acquiring the property and requested that HUD cancel the sale should Shaikh fail to fulfill any obligation. Finally, on April 22, 1998, Saltzman wrote to a HUD

2

official in Texas, requesting that HUD effect the cancellation of the sale of the property to Shaikh because the closing had not occurred on or before April 13, 1998.

Defendants also contacted Shaikh directly about the sale of the property. On May 11, 1998, Saltzman asked Shaikh to withdraw his purchase of the property and notified him that the City intended to condemn the property if he followed through on the purchase of the property. Shaikh subsequently withdrew his bid, and HUD sold the property to the second highest bidder, a Caucasian, non-Muslim, non-Asian Illinois resident. Defendants abandoned their attempts to condemn or otherwise seize the property upon receiving confirmation that Shaikh had withdrawn his bid.

## DISCUSSION

The purpose of a motion to dismiss is not to decide the merits of the challenged claims but to test their sufficiency under the law. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In deciding a motion to dismiss, the Court reads the complaint liberally, dismissing the complaint only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief." *Conley v. Gibson*, 355 U.S. 41, 45 (1957). "A complaint may not be dismissed unless it is impossible to prevail under any set of facts that could be proved consistent with the allegations." *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000) (quoting *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997)). With these standards in mind, the Court assesses the defendants' motion to dismiss.

I.   **Fair Housing Act Claim (Count 1)**

In Count 1, Shaikh alleges that defendants violated the Fair Housing Act, 42 U.S.C. §§ 3604 & 3617 (FHA), by interfering with the sale of the property after Shaikh made a bona fide

3

offer; by making unavailable or denying residential property to Shaikh, a member of several protected classes under the Act; and by seeking to force HUD to discriminate against Shaikh in the terms, conditions and privileges of the sale. Defendants argue that Shaikh cannot state a claim under the FHA because he wanted to buy the property as a commercial venture rather than as a dwelling and because the Act does not proscribe defendants' conduct. Defendants also argue that in the event that Shaikh has alleged a violation of the FHA, the claims against the individual defendants must be dismissed. For the reasons that follow, the Court dismisses Shaikh's FHA claim.

Under Section 3604(a) of the FHA, it is unlawful "[t]o refuse to sell or rent after the making of a bona fide offer . . . or otherwise make available or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." A "dwelling" is defined in Section 3602(b) as "any building, structure or portion thereof which is occupied, or designed or intended for occupancy as a residence by one or more families." Section 3617 makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." Section 3613(a)(1)(A) provides that "an aggrieved person may commence a civil action in an appropriate United States district court." An "aggrieved person" is defined as "any person who . . . claims to have been injured by a discriminatory housing practice." 42 U.S.C. § 3602(i).

Defendants argue that the FHA simply does not apply to commercial ventures. *See Patel v. Holley House Motels*, 483 F. Supp. 374, 381 (S.D. Ala. 1979) (FHA does not apply to sale of motel to protected class member); *Matsunaga v. Century 21*, No. 84 C 11018, 1985 WL 1113, *1 (N.D. Ill. May 7, 1985) (FHA claim brought by Japanese plaintiffs dismissed because grocery

4

store was commercial property and did not constitute a "dwelling"). Defendants argue further that to the extent the FHA does cover sales of commercial property, it applies only in circumstances where the plaintiff, or someone on whose behalf the plaintiff is suing, is a member of a protected class and was discouraged from purchasing or renting a place where a protected class member intended to live. *See, e.g., Baxter v. City of Belleville*, 720 F. Supp. 720, 730-31 (S.D. Ill. 1989) (prospective owner of AIDS hospice permitted to sue under FHA where zoning decision discriminated against AIDS-infected potential residents).

Shaikh responds that standing to sue is broadly construed under the Act, and that all he needs to allege is his membership in a protected class and a distinct, palpable injury arising from the alleged discriminatory housing practice. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) ("Thus the sole requirement for standing to sue under [the Fair Housing Act] is the Art. III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered 'a distinct and palpable injury.'"). Shaikh argues that his claim fits squarely within the purview of the FHA because he is a member of several protected classes; an apartment complex fits the definition of "dwelling"; he made a bona fide offer on that dwelling; defendants interfered with his right to purchase that dwelling; and he suffered a distinct, palpable injury because he incurred financial losses arising from his failure to complete the purchase of the property.

Neither party has cited, and the Court has not discovered, any authority directly on point. Although defendants cite authority for the proposition that interference with the sale of commercial property to a protected class member does not invoke the FHA, these cases are distinguishable principally because they turned on whether the property involved constituted a

5

"dwelling." *See Patel*, 483 F. Supp. at 381 (FHA does not apply to sale of motel); *Matsunaga*, 1985 WL 1113, at *1 (FHA claim dismissed because grocery store did not constitute a "dwelling"); *Weingarten Realty Investors v. Albertson's, Inc.*, 66 F. Supp. 2d 825, 849 (S.D. Tex. 1999) (FHA does not apply to sale of commercial real estate). The Court agrees with Shaikh that the property is a dwelling as defined by the FHA, albeit a dwelling that Shaikh planned to buy as a commercial investment rather than as a home for himself.

Shaikh emphasizes that courts have held that prospective owners of commercial ventures who have suffered economic injury have standing to sue under the FHA even when they do not plan to dwell on the property. *See Baxter*, 720 F. Supp. at 730-31 (prospective owner of AIDS hospice had standing to sue based on economic injury arising out of adverse zoning decision); *Housing Investors, Inc. v City of Clanton*, 68 F. Supp. 2d 1287, 1294 (M.D. Ala. 1999) (real estate developers had standing to sue under FHA where zoning decision denied permission to build housing for low income minority tenants). These cases, however, are also distinguishable because those plaintiffs were arguably suing on behalf of protected minority members who planned to live in those structures. In *Baxter*, the issue was whether the plaintiff had standing to sue under section 3604(f)(1)(B), which prohibits discrimination due to the handicap of "a person residing in or intending to reside in that dwelling after it is so sold, rented or made available." *See Baxter*, 720 F. Supp. at 730. Baxter, who did not have AIDS and did not plan to live in the hospice, sought an injunction to compel the issuance of a special use permit to convert a vacant office building into an AIDS hospice. *Id.* at 721. The court held that Baxter had standing to sue under the FHA based on the economic injury he suffered from the loss of income from tenants and further held that under the overall intent of the FHA, Baxter was the proper proponent of the

6

rights afforded by Section 3604, namely the rights of the disabled to buy or rent property free from discrimination. *See id.,* 720 F. Supp. at 730-31. Unlike *Baxter*, there is no indication that Shaikh is asserting the rights of anyone, including himself, who would be denied the right to live in the property in violation of the FHA.

We agree with defendants that the issue in this case is more fundamental than whether Shaikh has standing to sue under the FHA. Rather, the issue is whether the FHA even applies to prohibit interference with the sale of an apartment complex to a minority buyer who does not intend to live in the building, but rather is buying the property as a commercial venture. Shaikh was not intending to live in the apartment complex and does not allege that the defendants' conduct was motivated by the protected class status of anyone intending to inhabit the property. The overall purpose of the FHA is to "further equal-housing opportunity and to eliminate segregated housing." *South Suburban Housing Center v. Board of Realtors*, 935 F.2d 868, 882 (7th Cir. 1991). *See also* 42 U.S.C. § 3601. The FHA must be applied broadly only within the terms of the statute. *See Southend Neighborhood Improvement Association v. County of St. Clair*, 743 F.2d 1207, 1209-10 (7th Cir. 1984). As such, even though the property fits the definition of a dwelling under the FHA, the Court is persuaded by the line of cases holding that the FHA does not apply to the sale of residential property to a person who is buying the property as a commercial venture, has no intention of residing in the property, and is not suing on behalf of protected class members who would reside there. *See Patel*, 483 F. Supp. at 381 (holding that plaintiff seeking to purchase motel had no FHA claim where it was "undisputed that Plaintiffs at all times sought to purchase the [motel] as a commercial venture, and that no Plaintiff intended to reside in the [motel]"); *Matsunaga*, 1985 WL 1113 at * 1 (dismissing

7

plaintiffs' FHA claim because plaintiffs sought to rent the commercial portion of the building rather than the residential portion). The Court therefore dismisses Shaikh's Fair Housing Act claim.

## II. Section 1981 and 1982 Claims (Counts 2 and 3)

In Counts 2 and 3, Shaikh alleges that defendants' conduct violated his rights under both 42 U.S.C. § 1981, which prohibits discrimination in contractual relations, and § 1982, which prohibits discrimination in the sale and rental of real and personal property. Because Sections 1981 and 1982 both derive from the first section of the Civil Rights Act of 1866 and share a common purpose, they are generally construed in tandem. *See Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). To state a claim under Sections 1981 and 1982, Shaikh must allege that (1) he is a member of a racial minority; (2) defendants intended to discriminate against him on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute, namely, the making and enforcing of a contract or the sale or lease of real property. *Id.*

Defendants argue that Shaikh has failed sufficiently to allege the second and third elements of his Section 1981 and 1982 claims. The Court disagrees. Shaikh has alleged that he had a binding contract with HUD to buy specific property; defendants forced him to abandon the enforcement of that contract on account of his race; and defendants did not interfere with the white citizen who eventually contracted to purchase the property. *See* Compl. ¶¶ 1, 9, 17-19, 24. First, regarding defendants' intent to discriminate on the basis of race, the Court cannot say that Shaikh can prove no set of facts that will allow him to establish his case, especially under the *McDonnell-Douglas* burden-shifting method of proof. Further, the fact that Shaikh alleges he

8

entered into a contract for a specific piece of property, which defendants forced him to abandon, distinguishes this case from those cited by defendants. *Compare Bagley v. Ameritech Corp.*, 220 F.3d 518, 521-22 (7th Cir. 2000) (§ 1981 and 1982 claims failed on summary judgment due to determination that plaintiff voluntarily decided not to purchase property from defendant); *Morris*, 89 F.3d at 413 (plaintiffs' § 1981 and 1982 claims failed due to failure to allege that defendants' harassment interfered with actual loss of contract interest, as opposed to loss of future contract opportunities). Shaikh's allegations are sufficient to allow him to pursue his Section 1981 and 1982 claims.

### III. Section 1983 Claim (Count 4)

In Count 4, Shaikh alleges that defendants' conduct violated 42 U.S.C. § 1983 by depriving him of certain constitutional rights, including his rights to due process and equal protection of the law and his right to travel.[1]

#### A. Due Process Claims

Shaikh alleges both procedural and substantive due process violations arising out of defendants' conduct. To state a claim for a procedural or substantive due process violation, Shaikh must allege that he had a legal right to the property, *see New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1479 (7th Cir. 1990), of which he was deprived without due process, *see Board of Regents v. Roth*, 408 U.S. 564, 566-67 (1972).

---

[1]Shaikh has abandoned his claim that defendants violated his right to make and enforce contracts pursuant to Article I, Section 10 of the United States Constitution. *See* Plf.'s Resp. at 13, n. 5.

9

In his response to the motion to dismiss, Shaikh recasts his procedural due process claim as a claim alleging an unconstitutional taking. *See* Resp. to Mot. to Dismiss at 14. Defendants argue that Shaikh has not alleged that his legal right to the property was taken and in any event his taking claim is unripe. It is not altogether clear that defendants' alleged threats constituted a taking. *See, e.g., Kleinschmidt v. County of Cook*, 287 Ill. App. 3d 312, 678 N.E.2d 1065, 1068-69 (1997). *See generally Wendy's International, Inc. v. City of Birmingham*, 868 F.3d 433, 436-37 (11th Cir. 1989). But assuming a taking occurred, Shaikh's claim must be dismissed as unripe because the complaint contains no allegation that he sought just compensation for his interest in the property and was denied this by the state of Illinois. *See Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985) (no taking occurs until plaintiff has been denied just compensation for property); *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000) (takings claims subject to special ripeness doctrine).

The determination of whether Shaikh has stated a substantive due process claim turns on whether he has alleged a legitimate claim of entitlement to the property. *See Roth*, 408 U.S. at 577. Defendants cite no authority for the proposition that a binding contract with HUD to purchase the property cannot vest Shaikh with a legitimate claim of entitlement to the property. The Court finds Shaikh's allegation that he had a binding contract is sufficient to state a claim. *See, e.g., Lim v. Central Du Page Hospital*, 871 F.2d 644, 648 (7th Cir. 1989) (noting in the employment contract context that property rights "normally" arise out of a contract). Defendants also cite no authority for the proposition that their allegedly discriminatory invocation of the power of eminent domain to force Shaikh to abandon his purchase of the property is constitutionally acceptable. Although defendants point out that each citizen owns property

10

subject to the superior right of eminent domain, none of their cases support the notion that defendants are free to threaten to exercise the power of eminent domain based on a person's national origin or the other factors alleged by Shaikh. Moreover, in the context of zoning cases – which are analogous to this case – the Seventh Circuit has recognized that although most zoning decisions do not give rise to a substantive due process claim, zoning decisions based on race or color certainly do. *See Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 467 (7th Cir. 1988). Further, Shaikh could prove, consistent with the allegations of the complaint, that defendants' conduct based on considerations of race, religion or Shaikh's nonresident status was "invidious and irrational" or "arbitrary and unreasonable." *See id.* Shaikh has therefore stated a claim for a substantive due process violation.

**B.    Equal Protection Claim**

Defendants argue that Shaikh has not stated an equal protection claim because he fails to allege that defendants singled him out for different treatment based on his membership in a protected class. The Court disagrees. Shaikh has alleged that defendants improperly interfered with his contract to purchase the property because of his race, alienage, religion and state of residence. Compl. ¶ 1. Shaikh further alleges that defendants were willing to let the property be acquired by a white, non-Muslim Illinois resident. *Id.* ¶¶ 18, 19. These allegations, which set forth Shaikh's claims of disparate treatment based on his membership in several vulnerable groups, are sufficient to state a claim for an equal protection violation. *See New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1481 (7th Cir. 1990) ("In order to assert a constitutional claim based on violation of equal protection, a complaining party must assert disparate treatment based on their membership in a particular group."). Further, as noted

above in the substantive due process context, the Court is unable to say that Shaikh will be unable to prove that defendants' actions based on his race, religion and nonresident status were "invidious and irrational." *See Coniston*, 844 F.2d at 467. This test has equal force in the equal protection context. *Id.* at 468. Shaikh's equal protection claim therefore survives.

### C. Right to Travel Claim

Shaikh, a Connecticut citizen, alleges that defendants violated his constitutional right to travel by interfering with his purchase of the property because he lives out of state. The right to travel protects, among other things, "the right of a citizen of one State . . . to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State." *Saenz v. Roe*, 526 U.S. 489, 500 (1999). This component of the right to travel has been held to protect nonresidents who enter a state to obtain employment, procure medical services, or engage in commercial shrimp fishing. *Id.* at 502. The Court does not see why a nonresident's purchase of property would not be covered by this same principle, and defendants have provided no authority indicating that Shaikh cannot state a claim. Shaikh's allegations are sufficient to survive a motion to dismiss; we leave for another day the question whether defendants had a valid reason for treating Shaikh differently from the Illinois resident. *See id.* at 502 (protections of right to travel are not absolute, and discrimination against nonresidents may be justified in some circumstances).

### IV. Liability of the City

The parties agree that to hold the City liable for the alleged violations of Sections 1981, 1982 and 1983, Shaikh must demonstrate either that (1) an express municipal policy exists that, when enforced, caused a constitutional deprivation; (2) a widespread practice exists that,

although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) that the "constitutional injury was caused by a person with final policymaking authority." *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). Shaikh contends that he is proceeding under the third method of establishing municipal liability, and that although he has not specifically alleged that Stasch and Saltzman are "final policymakers," his allegations of their high-ranking positions as Commissioner and Deputy Commissioner of Housing are sufficient.

To secure dismissal of the claims against the City under Rule 12(b)(6), defendants must make a clear showing that Stasch and Saltzman are not final policymakers with respect to their conduct involving the property. *See Yeksigian v. Nappi*, 900 F.2d 101, 104-05 (7th Cir. 1990). The determination of whether a municipal employee is a final policymaker is one of local law. *See Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992). To support their contention that Stasch and Saltzman are not final policymakers, defendants invoke the Chicago Municipal Code, 2-44-030, which states that "[i]t shall be the duty of the commissioner of housing to enforce the provisions of Chapter 5-8 of this Code, and to supervise and coordinate the formulation and execution of projects and programs affecting housing within the City of Chicago . . . ." Defendants claim that the Municipal Code establishes that Stasch and Saltzman are not charged with formulating municipal policy and therefore are not final policymakers for the purposes of this action. *See Auriemma*, 957 F.2d at 400 ("That a particular agent is the apex of a bureaucracy makes the decision 'final' but does not forge a link between 'finality' and policy.'"). The Court disagrees. The language of the above quoted Code section is broad enough to suggest that local law invests the Commissioner of Housing with power to formulate policy, particularly with

13

regard to projects and programs affecting housing in the City. In resolving defendants' motion to dismiss, we cannot say that Shaikh will be unable to prove that Stasch and Saltzman acted as final policymakers with regard to Shaikh's civil rights claims.

## V. Qualified Immunity

Defendants' final argument is that Shaikh's Section 1981, 1982 and 1983 claims against Stasch and Saltzman must be dismissed because they enjoy qualified immunity from suit.[2] Qualified immunity protects from liability public officials performing discretionary functions as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harrell v. Cook*, 169 F.3d 428, 431 (7th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982)). Although Shaikh argues that a defense of qualified immunity is inappropriate to consider on a Rule 12(b)(6) motion to dismiss, the Seventh Circuit has stated that because qualified immunity is an immunity from suit rather than a mere defense to liability, "it is a question that should be resolved as promptly as possible." *Harrell v. Cook*, 169 F.3d 428, 431 (7th Cir. 1999) (reversing district court's denial of a Rule 12(b)(6) motion on qualified immunity grounds). *See also John Does 1-30 v. Franco Productions*, No. 99 C 7885, 2000 WL 968827, *5 (N.D. Ill. July 13, 2000) (granting defendants' motion to dismiss on qualified immunity grounds). Nevertheless, dealing with the issue of qualified immunity on a Rule 12(b)(6) motion is a "delicate matter that district courts

---

[2]Although the bulk of case law regarding the doctrine of qualified immunity has been developed in the context of Section 1983 cases, there exists authority for the proposition that public officials may assert the defense against § 1981 and 1982 claims as well. *See Lalvani v. Cook County*, No. 98 C 2847, 2000 WL 198459, *5 (N.D. Ill. Feb. 14, 2000) (considering the defense of qualified immunity to a Section 1981 claim). For present purposes, we do not decide this point but rather assume that the defense would also cover Shaikh's § 1981 and 1982 claims.

14

should approach carefully"; the Seventh Circuit has stated that qualified immunity "is almost always a bad ground for dismissal" and is better addressed at summary judgment. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n. 3, 775 (7th Cir. 2000).

Once a public official raises the defense of qualified immunity, the plaintiff bears the burden of proof on the issue. *Erwin v. Daley*, 92 F.3d 521, 525 (7th Cir. 1996). Two questions arise in this context: (1) whether the plaintiff has alleged a violation of a constitutional right; and (2) whether the plaintiff has demonstrated that the applicable constitutional standards were "clearly established" at the time in question. *Id.* at 525. With regard to the first question, we have already determined that Shaikh has sufficiently alleged violations of his constitutional rights. For the second question, the issue is whether in 1998 a reasonable Commissioner or Deputy Commissioner of Housing could have concluded that it was proper to threaten a prospective purchaser of property with condemnation proceedings based on his race, religion and/or status as a nonresident of Illinois. Shaikh can establish this "either by showing that a closely analogous case has already established both the right at issue and its application to the factual situation at hand, . . . or by showing that the violation was so obvious that a reasonable person would necessarily have known about it." *Erwin*, 92 F.3d at 525.

Shaikh's claim falls into the latter category. He has alleged that defendants' threat to condemn was based on criteria that any reasonable official would understand were constitutionally improper, and his allegation is supported by his claim that defendants were perfectly willing to let a white, non-Muslim person buy the property. If these allegations are proven, Stasch and Saltzman would not be entitled to qualified immunity because discrimination against Shaikh on these bases is manifestly against the law. *See Lalvani v. Cook County*, No. 98

15

C 2847, 2000 WL 198459, *5 (N.D. Ill. Feb. 14, 2000) (rejecting outright defendant's qualified immunity claim on the basis of race discrimination); *Cherry v. City of Chicago*, 96 C 5422, 1998 WL 160952, *2 (N.D. Ill. Mar. 31, 1998) (same). *See generally Coniston*, 844 F.2d at 467-68.

Shaikh's claims based on his nonresident status ultimately may present more difficult questions for purposes of qualified immunity. The Court believes, however, that viewing the complaint's allegations in the light most favorable to Shaikh, Stasch and Saltzman are not entitled to qualified immunity. The right of nonresidents to enjoy the same privileges and immunities as residents of a state has been clearly established for many years. *See Saenz*, 526 U.S. at 501-02.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss [Item 21-1] is granted as to Counts 1, 5, 6 and 7 but is otherwise denied. Defendants are directed to answer Counts 2, 3, and 4 on or before February 23, 2001. The case is set for a status hearing on March 1, 2001 at 9:30 a.m. for the purpose of setting a discovery schedule.

Dated: February 9, 2001

_____
MATTHEW F. KENNELLY
United States District Judge