Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4235 | **DATE** | 5/28/2002 |
| **CASE TITLE** | Shaikh vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons set forth on the attached Memorandum Opinion and Order, defendant's motion for summary judgment (37-1) is granted; defendant's motion to strike (15-1) is denied as moot. Judgment is entered in favor of defendants.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAY 3 0 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 53 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | MAY 3 0 2002 | |
| | | 02 MAY 29 PM 5:35 | date mailed notice | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHAHID SHAIKH,                                    )
                                                  )
           Plaintiff,                             )
                                                  )
vs.                                               )   Case No. 00 C 4235
                                                  )
CITY OF CHICAGO; JULIA STASCH,                    )
individually and in her official capacity; and   )
DAVID SALTZMAN, individually and in               )
his official capacity,                            )
                                                  )
           Defendants.                            )

## MEMORANDUM OPINION AND ORDER

DOCKETED
MAY 30 2002

MATTHEW F. KENNELLY, District Judge:

Plaintiff Shahid Shaikh has sued the City of Chicago, its Commissioner of the Department of Housing, Julia Stasch, and its Deputy Commissioner of the Department of Housing, David Saltzman. Shaikh originally filed a seven-count complaint; we previously dismissed four of the seven counts. *See Shaikh v. City of Chicago*, No. 00 C 4235, 2001 WL 123784 (N.D. Ill., Feb. 9, 2001). Defendants have now moved for summary judgment on the remaining counts of the complaint: Count 2 (violations of 42 U.S.C. § 1981), Count 3 (violations of 42 U.S.C. § 1982), and Count 4 (violations of 42 U.S.C. § 1983).

### Facts

In September 1997, the U.S. Department of Housing and Urban Development ("HUD") informed the City that it was initiating foreclosure proceedings against the owner of the

Lowe Avenue Terrace Apartments, located at 6531 South Lowe Avenue in Chicago, and that it intended to conduct a foreclosure sale of the property. HUD outlined the conditions under which it would sell the property, including that the purchaser would be required to perform certain necessary repairs to the building and to maintain the complex as affordable housing for low-income persons. HUD was required to notify the City of the pending foreclosure sale as part of its obligations under the Multifamily Property Disposition Reform Act of 1994.

In early 1998, the area surrounding and including the Lowe Apartments was identified by the City as a potential relocation area for the Kennedy-King City College. Draft site plans were created, which as early as February 1998 identified the Lowe Apartments site as a "future campus dorms opportunity." As a result, defendant Saltzman contacted HUD to determine the status of the foreclosure on the Lowe site and to express the City's interest in the property. HUD informed Saltzman that the foreclosure sale had not yet occurred. However, HUD stated it expected no bidders on the property and anticipated that HUD would simply acquire title to the property. Based on this information, the City decided to wait until HUD gained ownership of the property and to then attempt to negotiate a transfer of the property to the City.

On March 5, 1998, HUD put the Lowe Avenue property up for auction. Contrary to HUD's predictions, the property attracted two bids. Plaintiff Shaikh, an East-Asian Muslim who was born in India but is now a United States citizen and a Connecticut resident, was the highest bidder. Shaikh and HUD subsequently entered into a purchase agreement for the property, and the closing was scheduled for May 1, 1998.

On March 10, 1998, the City learned that HUD had entered into a purchase

contract for the property. On March 30, 1998, defendant Stasch wrote to HUD stating that the Lowe Apartments were located in a "strategically important portion of the Englewood neighborhood" and that numerous projects were being undertaken to revitalize the area. Defendants' Motion for Summary Judgment, Exhibit 12. Stasch continued that "[i]ncluded in these projects [is] the potential construction of a new campus for Kennedy-King City College .... Given that HUD has only required minimum rehab on the part of the new owner [of the Lowe Apartments], the City would view the transfer of this property to an out of state buyer at this time to be a significant impediment to the revitalization of this important area." *Id.* Stasch concluded by requesting that HUD retain ownership of the property "to allow for the relocation of the tenants and transfer of the property to the City." *Id.* In response, HUD informed the City that it felt compelled to proceed with the sale.

On April 3, 1998, Saltzman informed HUD's Assistant General Counsel in Chicago that the City was considering acquiring the Lowe Apartments by eminent domain in the event HUD transferred the property to Shaikh. On April 10, 1998, Stasch again wrote to HUD, urging it to cancel the sale to Shaikh. Defendants' Motion for Summary Judgment, Exhibit 13.

On April 30, 1998, Shaikh traveled to Chicago for the May 1 closing. At the closing, Shaikh learned that the City had a strong interest in acquiring the property. As a result, Shaikh postponed the closing to investigate the matter. On May 11, 1998, Saltzman asked Shaikh to withdraw from his purchase contract with HUD; he informed Shaikh that the City likely would seek to obtain the property through eminent domain if Shaikh took title. At some point during these discussions, Shaikh informed Saltzman that he was originally from India.

The City offered Shaikh $20,000 to withdraw from the purchase of the Lowe

Avenue apartments, which represented an amount "close to" the expenses Shaikh had incurred in connection with the Lowe Avenue purchase. On May 8, 1998, Shaikh wrote to HUD stating that, given the City's interest in the property, he no longer viewed the apartments as a long term investment and therefore was backing out of the purchase. Defendants' Motion for Summary Judgment, Exhibit 16. The City subsequently refused to honor its agreement to pay Shaikh $20,000.

After Shaikh withdrew from the purchase, rather than transferring the property to the City, HUD offered the property to the second-highest bidders, John Schlick and David Horn, two Caucasian, non-Muslim residents of Washington, D.C. The City, as it had with Shaikh, again expressed its interest in the property, asked the potential buyers to withdraw from the purchase, and threatened them with eminent domain proceedings. On June 15, 1998, Saltzman wrote to HUD, again reiterating the City's interest in taking ownership of the Lowe property for building part of the college campus and urging HUD to withdraw from the purchase. Defendants' Motion for Summary Judgment, Exhibit 19. Despite this, HUD sold the Lowe Avenue Apartments to Horn and Schlick, who unlike Shaikh had not backed off after learning of the City's interest.

Once the property was sold to Horn and Schlick, the City discontinued its efforts to purchase the Lowe Apartments because the "window of opportunity" for the City to acquire the property from HUD for a de minimus amount (*i.e.*, $1.00) had passed. The City ultimately did not go ahead with its preliminary plan to relocate the Kennedy-King City College to the Lowe Apartments site.

**Discussion**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, we construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Defendants have moved for summary judgment on Counts 2, 3, and 4 of the complaint.

**I.     Counts 2 and 3: Claims Under 42 U.S.C. § 1981 and § 1982:**

Defendants argue that Shaikh cannot sustain his claims under 42 U.S.C. § 1981, which prohibits discrimination in contractual relations, and 42 U.S.C. § 1982, which prohibits discrimination in the sale and rental of real and personal property. Sections 1981 and 1982 generally are construed in tandem because both derive from the first section of the Civil Rights Act of 1866 and share a common purpose. *See Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). To succeed on his Sections 1981 and 1982 claims, Shaikh must prove that (1) he is a member of a racial/ethnic minority; (2) defendants intended to discriminate against him on the basis of his race or national origin; and (3) the discrimination concerned one or more of the activities enumerated in the statute, namely, the making and enforcing of a contract or the sale or lease of real property. *Id.*

Shaikh can meet his burden of showing intentional discrimination either by offering direct evidence of discrimination or by proceeding under the indirect burden-shifting method set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Lynch v.*

-5-

*Belden and Company*, 882 F.2d 262, 268-69 (7th Cir. 1989) (use of burden-shifting method in § 1981 context); *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 334 (7th Cir. 1974) (§ 1982). Shaikh provides no direct evidence of discrimination and instead attempts to proceed under the indirect method. Under that method, Shaikh must first establish a prima facie case of discrimination. To do this, Shaikh must come forward with evidence from which a jury could conclude that: (1) he belongs to a protected class; (2) he performed his obligations under the real estate contract; (3) he suffered an adverse action; and (4) similarly-situated non-protected individuals were treated more favorably. *E.g., Lalvani v. Cook County, Illinois*, 269 F.3d 785, 789 (7th Cir. 2001); *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 693 (7th Cir. 2000).

The parties' dispute centers around the fourth element of the prima facie case: whether similarly-situated non-protected individuals were treated more favorably. Defendants argue that Shaikh cannot show that similarly situated non-protected individuals were treated more favorably because Schlick and Horn (the white alternate bidders) were also "threatened" with eminent domain proceedings. There is no dispute that both Shaikh and the Schlick/Horn group were told that the City wanted the Lowe property and that eminent domain proceedings were a possibility. However, Shaikh argues that Schlick and Horn were treated more favorably because they were invited to a sit-down meeting with defendants in Chicago – an invitation that was not extended to Shaikh – and because defendants offered $20,000 to Shaikh to induce him to withdraw from the purchase, but extended no such offer to Schlick and Horn. Neither of these points are sufficient to show that Schlick/Horn received more favorable treatment. The first shows nothing more than that the Schlick/Horn group received the eminent domain "threat"

-6-

personally, as opposed to over the telephone; the second point actually evidences *less* favorable treatment for Schlick and Horn. Accordingly, we conclude that Shaikh has failed to establish a prima facie case.[1]

Shaikh argues that "this is not a typical case" and the requirements of the prima facie case should be relaxed. We need not decide this question, however, for even if we assume that Shaikh can make out a prima facie case, he has failed to produce evidence of pretext, as required under the burden-shifting method of proof.

If a plaintiff in a discrimination case can establish a prima facie case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for its decision. *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 398 (7th Cir. 1997). If the defendant does so, the burden shifts back to the plaintiff to show that the defendant's stated reason is just a pretext for discrimination. *Id.* Though the burden of producing evidence shifts between the plaintiff and defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

The defendants offer a legitimate, non-discriminatory reason for their actions toward Shaikh: they wanted to acquire the Lowe Apartments site from HUD at minimal cost for

---

[1] We are not limited to considering only Shaikh's treatment vis-a-vis Schlick and Horn. Rather, Shaikh might also be able to make out a prima facie case by showing that in other cases where HUD sold property through foreclosure, the City did not pressure non-minority bidders to cancel their purchases. In his response brief, Shaikh baldly asserts that it was unprecedented for the City to try to cancel the sale of the Lowe Apartments and threaten the exercise of eminent domain powers after HUD accepted Shaikh's bid. But he fails to support these assertions and also offers no evidence that non-minorities were treated more favorably in similar circumstances.

potential use in expansion of the Kennedy-King City College. Accordingly, the burden shifts back to Shaikh to establish that this stated reason was pretextual. To establish pretext, Shaikh must present evidence from which a fact finder may infer that at the time the defendants asked Shaikh to withdraw and threatened eminent domain proceedings, this was a sham – in other words that they had no real interest in acquiring the property for the City. "Pretext means more than a mistake on the part of the [defendant]; pretext 'means a lie, specifically a phony reason for some action.'" *Wolf v. Buss (America), Inc.*, 77 F.3d 914, 919 (7th Cir. 1996) (citations omitted); *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998) (plaintiff must show that the defendants "lied about [their] proffered explanation" for the why they took the adverse action that they did). On this score, we find that Shaikh has failed to provide evidence from which a reasonable fact finder could find that the defendants' proffered reason for their action was pretextual.

Shaikh's primary argument on pretext is that it was "demonstrably false" that the Lowe Apartments were being considered for the Kennedy-King relocation project. Plaintiff's Response Br. at 7. He asserts that the Kennedy-King project was at an early stage of development and had not yet been formally approved by other City agencies and that it would have been foolish for defendants to believe the subject property would be used for "dormitories for a campus that had no out of town students." *Id.* at 7. But this is a far cry from evidence that defendants knew that the City Colleges in fact had no interest in the Lowe property at the time they threatened Shaikh with eminent domain proceedings. In order for his claims to survive, Shaikh must provide some evidence that at the time they threatened condemnation, the City's officials had no interest in acquiring the property. He has failed to do so.

Shaikh also argues that the City should have persuaded HUD either to cancel the sale before Shaikh bid or to bid its indebtedness at the sale. Again, this does nothing to show that the proffered reason for the City's action with respect to Shaikh was pretextual; Shaikh is merely arguing for what he believes would have been a more prudent course of action for the City. Finally, Shaikh argues that the City's offer of $20,000 to withdraw from the purchase was phony. But even if so, and even if Shaikh has a viable breach of contract claim against the City, we fail to see how this shows that the Kennedy-King relocation explanation was false. For these reasons, the Court grants summary judgment in favor of defendants on Counts 2 and 3.

## II.   Count 4: Claims Under 42 U.S.C. § 1983:

In Count 4, Shaikh asserts that Stasch and Saltzman violated 42 U.S.C. § 1983 by depriving him of certain constitutional rights, including his rights to substantive due process and equal protection of the law and his right to travel. To succeed on his Section 1983 claims, Shaikh must establish that Stasch and Saltzman acted under color of state law and that they intentionally deprived Shaikh of "rights, privileges, or immunities secured by the Constitution or laws of the United States." *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1479 (7th Cir. 1990) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). The parties do not dispute that Stasch and Saltzman acted under color of state law. We thus focus on the second part of the test. Shaikh's equal protection and substantive due process claims are premised primarily on the same allegations of race and national origin discrimination that formed the basis of his § 1981 and § 1982 claims. Because we have concluded that Shaikh has failed to provide evidence from which a reasonable fact finder could conclude that defendants intentionally discriminated against him based on his race and/or national origin, his substantive due process

claim and equal protection claims likewise fail.

Shaikh also asserts an equal protection claim based on his "right to the same privileges of citizens of Illinois, including the right to purchase and hold real estate." Plaintiff's Response at 10. Defendants respond by asserting that its actions with respect to Shaikh had nothing to do with his out-of-state status; rather, the impetus for their actions was the potential Kennedy-King relocation. As we noted above, Shaikh has failed to provide evidence from which a reasonable fact-finder could conclude that the Kennedy-King explanation was merely a pretext for unlawful discrimination. Further, Shaikh has provided no evidence that he was treated any differently than any Illinois citizen – or non-citizen for that matter; indeed, the property ultimately was sold to non-Illinois citizens. Shaikh's equal protection claims based on his citizenship thus fail as well.

Shaikh also suggests in his response brief that he was the victim of "sheer vindictiveness" at the hands of the City, entitling him to proceed under a "class of one" equal protection theory. *See, e.g., Village of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000). A plaintiff succeeds on a "class of one" equal protection claim by demonstrating that the "defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000); see also *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (the Equal Protection Clause is violated when a public official "pick[s] on a person out of sheer vindictiveness") (citations omitted). In this case, Shaikh has failed to provide any evidence to suggest a personal vendetta against him by any City official.

We turn finally to Shaikh's right to travel claim. Article IV, Section 2 of the

-10-

Constitution provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." Though this protection is not absolute, the Privileges and Immunities Clause bars discrimination against citizens of other states where there is "no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." *Saenz v. Roe*, 526 U.S. 489, 502 (1999) (quoting *Toomer v. Witsell*, 334 U.S. 385, 396 (1948)). However, Shaikh has provided no evidence to suggest that the City actually treated out-of-state purchasers any differently than in-state purchasers. The only other bidders on the property were also out-of-state citizens, and thus the instant transaction provides no fodder for Shaikh's argument. Neither has Shaikh provided any evidence that in-state purchasers were favored in other transactions, or received better treatment in purchasing property via foreclosure from HUD. The only evidence Shaikh points to is a single comment by Stasch; this is not enough to show that he was deprived of his ability to purchase the property based on his out-of-state status. Indeed, the City did not block Shaikh's purchase of the property; he (unlike the other out-of-state bidders) elected to back off when advised of the City's interest. The evidence fails to support Shaikh's right to travel claim.

## Conclusion

For the foregoing reasons, defendants' motion for summary judgment [item # 37-1] is granted; defendants' motion to strike [item #51-1] is denied as moot. The Clerk is directed to enter judgment in favor of defendants.

Dated: May 28, 2002

MATTHEW F. KENNELLY
United States District Judge